Patrick J. Reilly
Nevada Bar No.: 6103
Matthew J. McKissick
Nevada Bar No.: 15281
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702-382-2101
Facsimile:  702-382-8135
Email:  preilly@bhfs.com
          mmckissick@bhfs.com

*Attorneys for Defendant/Counterclaimant, Auratone LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MUSIC TRIBE COMMERCIAL NV, INC. AND MUSIC TRIBE GLOBAL BRANDS, LTD., <br><br>     Plaintiffs, <br><br> v. <br><br> AURATONE LLC, <br><br>     Defendant. <br><br> AURATONE LLC, <br><br>     Counterclaimant, <br><br> v. <br><br> MUSIC TRIBE COMMERCIAL NV, INC. AND MUSIC TRIBE GLOBAL BRANDS, LTD., <br><br>     Counterdefendants. | Case No.: 2:18-cv-01682-JCM-BNW <br><br> **ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT** |

After considering the Motion of Defendant/Counterclaimant Auratone LLC to confirm the

July 9, 2021 Award (the "Award") rendered by Arbitrator Jane Michaels, and for entry of

Judgment thereon, any oral argument presented, and Response filed, all papers submitted by the

parties having been read, proper notice having been given, good cause appearing therefore,

1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Tel.702-382-2101

IT IS HEREBY ORDERED that:

The Award attached hereto as Exhibit A, pp. 1-18, is hereby confirmed.

**The clerk shall ENTER JUDGMENT as set out by the arbitration award (ECF No. 57-4 at 20-21) and CLOSE this case.**

Dated July 22, 2021.

_____
UNITED STATES DISTRICT JUDGE

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel.702-382-2101

2

# Exhibit A

Award
July 9, 2021

**ARBITRATION**

MUSIC TRIBE GLOBAL BRANDS, LTD.; and
MUSIC TRIBE COMMERCIAL NV, INC.,

        Claimant,

v.

AURATONE LLC,

        Respondents.

---

**AWARD**

---

This is a trademark case concerning ownership of the standard character mark "AURATONE" (the "AURATONE Mark"). The parties to this arbitration proceeding are Music Tribe Global Brands, Ltd. and Music Tribe Commercial NV, Inc. (collectively "Music Tribe") and Auratone LLC ("Auratone"). The parties entered into an Arbitration Agreement (the "Agreement") seeking determination of is a single issue: "Whether Auratone LLC owns rights in the AURATONE Mark in connection with loudspeakers, prior to any rights of Music Tribe Global Brands, Ltd. in the United States." Agreement Section I(d).

Music Tribe's priority date for the AURATONE Mark for loudspeakers is the filing date of its application to register the Mark with the United States Patent & Trademark Office ("USPTO") on June 12, 2012. Auratone filed an application to register the AURATONE Mark for loudspeakers on June 14, 2014. The question is whether Auratone can establish that it acquired common law rights in the AURATONE Mark that precede Music Tribe's June 12, 2012 priority date.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

In 1958 John Archibald Wilson ("Jack Wilson") founded a speaker business in California.  He began building his speakers entirely by hand – having designed, engineered, and constructed the speakers from his home in Los Angeles.  Mr. Wilson called his new speakers "Auratones."  Mr. Wilson's speakers were reference monitors developed to assist studio recording engineers and other music professionals mix music to mimic how songs ultimately sound on consumer speakers.

On February 28, 1963, Mr. Wilson filed a trademark application for the standard character mark "AURATONE" with the USPTO in International Class 9 (U.S. Class 36) in connection with:  "High Fidelity Furniture and Parts Thereof – Namely Loudspeaker Enclosures, Loudspeaker Wall Baffles, Extension Loudspeaker Enclosures, Loudspeaker Enclosure Grilles and Grille Boards, Loudspeaker Enclosure Speaker Port Covers, Loudspeaker Enclosure Tuning Ducts, Loudspeaker Enclosure Mounting Bracket Kits, Loudspeaker Adapter Boards, High Fidelity Component Equipment Cabinets, and Record Changer Bases; Also, High Fidelity Loudspeaker Systems, Extension Loudspeakers, and Loudspeakers."  The date of Mr. Wilson's first use of the AURATONE Mark was November 19, 1958 and the date of its first use in commerce was December 22, 1959.  On October 1, 1963 the USPTO approved the application, granting Mr. Wilson the nationwide exclusive right to use the AURATONE Mark in connection with music speakers.  U.S. Registration Number 757, 789.

Initially Mr. Wilson operated as a sole proprietor under the name Jack Wilson Company.  By 1969 he was doing business under the name Auratone Products, continuing to operate as a sole proprietor.  The AURATONE Mark was assigned from

2

John A. Wilson d/b/a Jack Wilson Company to John A. Wilson d/b/a Auratone Products.

In the 1970s, Mr. Wilson created the Auratone Corporation with his wife, Harriet Elaine Wilson and their son Paul Wilson acting as the corporation's first directors.  Mr. Wilson licensed use of the AURATONE Mark to the corporation and conducted Auratone-related business through the corporation from that point forward.  The Auratone Corporation was run as a family enterprise.  Mr. Wilson's wife worked with him as the company's vice president.  The Wilson children, including his daughters Marlaine Hysell ("Ms. Hysell") and Michelle Jacobsen ("Ms Jacobsen"), also helped with the speaker-manufacturing process during their formative years by performing tasks suitable for children.

During the 1970s and 1980s, Mr. Wilson's Auratone speakers were endorsed by Quincy Jones, who used them to record and mix his albums.  Most notably, Quincy Jones used Auratone speakers in the production of Michael Jackson's famous Thriller album.  The Thriller album became one of the best-selling albums of all time, significantly enhancing the reputation of the Auratone speaker.  As recently as 2020, Michael Jackson's producer was still using Jack Wilson's Auratone speakers.

In addition to Quincy Jones' endorsement of Auratone speakers, Lion Share Recording Studios, Inc. gave Auratone permission to use its name and photographs for advertising, promotional and publicity purposes.

Following these endorsements, Auratone experienced banner years in recognition and sales.  However, after the death of his wife in December 1987, Mr. Wilson's

business started suffering.  In addition, Mr. Wilson's own health declined and, by the 1990s, he was struggling to keep up with manufacturing and orders for his products.

In 2004, in part due to his deteriorating physical condition, Mr. Wilson failed to file his Section 8 Declaration to renew the AURATONE Mark's registration with the USPTO.  As a result, the trademark registration was cancelled on July 3, 2004.  Mr. Wilson passed away in June 2005 at the age of 84.

Mr. Wilson left a Will that specified how his assets were to be distributed.  With respect to the Auratone Corporation and Auratone Products business, the Will provides as follows:

> I give any stock or interest which I may have in Auratone
> Corporation and Auratone Products, or any other corporation
> or business organization in which I am actively involved and
> in which I have an ownership to my wife, HARRIET
> ELAINE WILSON, if she survives me for thirty (30) days,
> and if she does not then this gift shall lapse and become a
> part of the residue of my estate.

The Will directs that the residue of Mr. Wilson's estate goes to the Trustee of the Wilson Family Trust, dated March 2, 1984 and amended on September 14, 1987. During their lives, Mr. Wilson and his wife were the trustees of the Wilson Family Trust.  Subsequent to Mr. Wilson's death, the successor Trustee became California First Bank.

After Mr. Wilson passed away, his daughters (Ms. Hysell and Ms. Jacobsen) traveled to San Diego to handle their father's affairs.  They arranged to transport the property from Mr. Wilson's home in San Diego to Ms. Hysell's home in Georgia.  The property included sound systems in various forms of completion, as well as various tools, certain machinery, and boxes of raw speakers, wires, and crossovers.

When the contents of Mr. Wilson's home arrived in Georgia, his daughters spent days organizing and taking stock of all Auratone products and paperwork in their possession in preparation to sell and ship products to customers.  Ms. Hysell dedicated space in her home to store and organize the products, tools, design drawings and proprietary information.

In 2003, before Jack Wilson's death, Ms. Hysell registered a website, www.HysellStuff.com in order to share the family's unique history and information about Auratone.  After her father's death, Ms. Hysell converted the website into an online marketplace where she advertised and sold some Auratone inventory.  Ms. Hysell also utilized eBay to advertise and sell Auratone products.  Ms. Hysell registered the website www.AuratoneProAudio.com to further support the sale of Auratone products and linked this domain to the www.HysellStuff.com/Auratone.  She also registered a domain name incorporating the AURATONE Mark.  In early 2009, with the help of her son, Ms. Hysell created a new AURATONE logo to make the AURATONE Mark's design more modern.

Mr. Wilson's daughters did not make any sales of any Auratone branded products from July 20, 2006 until after May 2017 – a period of nearly seven years.

Mr. Wilson's grandson, Alex Jacobsen, recalls from family visits to his aunt's house that Ms. Hysell tested speakers that were stored in her house, but she did not manufacture any Auratone brand speakers after her father's death.

In May of 2009, at the end of his first year of college, Alex Jacobsen discussed with his mother (Ms. Jacobsen) and his aunt (Ms. Hysell) his desire to take over the Auratone family business.  These discussions continued over the next several years.

The sisters concluded that Alex's education, personality, abilities and desire, coupled with the fact that Alex's father was building a workshop, made Alex uniquely qualified to resume the Auratone business after he completed college.

After Alex Jacobsen graduated from college in 2012, Ms. Hysell and Ms. Jacobsen testified that they orally transferred their interest in Auratone to him. There are no documents referencing this event.

Specifically, Ms. Hysell transferred all business documents, including plans, blueprints, designs, website domains, drawing and specifications. She also transferred the remaining inventory, equipment, tools, original artwork, design logos, drills, gigs, molds, speaker testing equipment, packaging, labeling and marketing materials. Many of these items were marked "Auratone." On May 18, 2013 Alex Jacobsen formed the Respondent entity Auratone LLC, which began selling loudspeaker products after that date.

## HISTORY OF THE DISPUTE BETWEEN THE PARTIES

On April 3, 2014, the USPTO approved for publication Music Tribe's application to register the AURATONE Mark. On June 11, 2014 Respondent filed a Notice of Opposition to Music Tribe's application. In its Notice of Opposition, Respondent alleged that it had prior rights, stating that "Auratone, LLC or its predecessors have been using the Mark in commerce in connection with loudspeakers since the 1950s." On the same day, Respondent filed its own application with the USPTO to register the AURATONE Mark for "audio speakers; loudspeakers" in International Class 9 under Section 1055 of the Lanham Act, claiming a date of first use of December 22, 1959. This Section allows for registration of a Mark "used legitimately by related companies"

allowing such use to "inure to the benefit of . . . applicant for registration."  15 U.S.C. § 1055.

Music Tribe filed a Motion for Summary Judgment in the USPTO's Opposition proceeding on the ground that the AURATONE Mark had been abandoned.  The Trademark Trial and Appeal Board held that the statutory presumption of abandonment was applicable, but it denied the Motion stating that there were factual issues to be determined concerning the intent to resume use.

In March of 2018 Music Tribe began selling Auratone branded speaker systems. As a result, on June 12, 2018 Auratone filed a trademark infringement complaint against Music Tribe in the U.S. District Court for the District of Massachusetts.  On September 4, 2018 Music Tribe filed a Motion to Dismiss the Massachusetts case for lack of personal jurisdiction and simultaneously filed an action for declaratory judgment in the U.S. District Court for the District of Nevada.  The Massachusetts Court transferred the case to Nevada where it was consolidated with the Nevada action. On January 15, 2019 the Board suspended the Opposition proceeding pending disposition of the Nevada lawsuit.

In the fall of 2019, the parties discussed the potential for an alternative dispute resolution procedure to resolve the key issues in the lawsuit and the USPTO proceeding.  The parties then entered into the Arbitration Agreement and agreed that the salient issue to be decided was priority rights in the AURATONE Mark used in commerce for loudspeakers.  Specifically, Section IV(l) of the Agreement, provides as follows:

> It is Auratone LLC's burden to prove ownership of the
> AURATONE Mark.  It is the Music Tribe parties' burden to

> prove abandonment.  The arbitrators will apply federal law
> as interpreted by the U.S. Court of Appeals for the Ninth
> Circuit in determining the legal questions within the scope
> of the arbitration and the applicable burden(s) of proof for
> these questions.

Music Tribe contends that its priority right to the AURATONE Mark dates to its filing of an Intent to Use Trademark Application on June 12, 2012.  Music Tribe asserts that Auratone must prove that it owns common law rights in the AURATONE Mark acquired prior to June 12, 2012 in order to overcome Music Tribe's priority rights in the Mark.

In opposition, Auratone claims priority in the AURATONE Mark that dates back to December 22, 1959, the date of Jack Wilson's first use.  Further, Auratone claims that the family loudspeaker business and rights to the AURATONE Mark were inherited by Jack Wilson's children and then transferred to Alex Jacobsen, one of the grandchildren.

Auratone has the burden of proving that the AURATONE Mark and accompanying business were inherited by Mr. Wilson's daughters and properly assigned to Alex Jacobsen, who formed Auratone LLC.  Music Tribe has the burden of proving that the AURATONE Mark was abandoned.

## THE PARTIES' STREAMLINED HEARING PROCEDURE

On January 21, 2021, approximately one month prior to the evidentiary hearing, counsel proposed a streamlined hearing procedure that entailed the joint submission of eight depositions and three declarations into the record, in lieu of live testimony of almost all of those witnesses, along with their mutual submission of joint exhibits that included all exhibits referenced in the submitted depositions and declarations.

I granted the proposed request to streamline the evidentiary hearing. Pursuant to that procedure, only one witness (Alex Jacobsen) testified at the hearing. Because of restrictions necessitated by the COVID-19 pandemic, the hearing was conducted virtually, rather than in-person. In advance of the virtual evidentiary hearing, I read the entirety of the deposition transcripts of all eight witnesses (some of whom were deposed multiple times) and the sworn Declarations submitted into evidence. I have also reviewed relevant legal authority, relying primarily on Ninth Circuit case law.

## LEGAL ANALYSIS

### A.    Jack Wilson's Will and Trust Agreement

Music Tribe's counsel correctly notes that Auratone has the burden of proving: (1) that the AURATONE Mark and accompanying Auratone business were inherited by Jack Wilson's daughters, Ms. Hysell and Ms. Jacobsen; and (2) that Mr. Wilson's daughters properly assigned the Mark and associated business to Mr. Wilson's grandson, Alex Jacobsen, who then formed Auratone LLC, the Respondent in this arbitration proceeding. Music Tribe contends that Auratone has failed to meet its burden of proof on this ownership issue.

Jack Wilson's Will clearly states that any stock or interest that he had in the Auratone Corporation and Auratone Products passed to his wife and, if she predeceased him, then to his estate. Since Mr. Wilson's Will directs that the residue of Mr. Wilson's estate goes to the Trustee of the Wilson Family Trust, Music Tribe contends that the Wilson Family Trust now owns the AURATONE Mark, having never conveyed any interest in the AURATONE Mark or Auratone business to Ms. Jacobsen or Ms. Hysell. Music Tribe further asserts that, if Ms. Jacobsen and Ms. Hysell did not inherit

9

the Auratone business and associated AURATONE Mark, then they could not have assigned anything to Alex Jacobsen.

In rebuttal to this contention, Auratone correctly notes that Jack Wilson personally owned the AURATONE Mark in his individual capacity.  This fact was established in the USPTO records as well as the Auratone Corporation's documents. Jack Wilson licensed the AURATONE Mark to the Auratone Corporation in exchange for a monthly royalty fee, and the license renewed automatically on an annual basis. Jack Wilson also retained ownership of the equipment and machinery used to make the loudspeaker products on which the AURATONE Mark was affixed.  Consequently, the Auratone Corporation never acquired ownership rights in the AURATONE Mark.

Under California probate law, "the intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument."  Cal. Prob. Code Section 21102(a).  Although the Will has not been probated, Jack Wilson's intention, both as testator of the Will and as trustor of the Wilson Family Trust Agreement, is clear:  "Following the death of the second Trustor to die, the Trustee shall . . . distribute . . . to the then living lawful issue of the Trustor's per stirpes." Joint Exhibit 9, the Amended and Restatement of Trust Agreement of John Archibald Wilson and Harriet Elaine Wilson, at page 10.

In order to effectuate Mr. Wilson's intention, in accordance with California law, I conclude that Mr. Wilson' daughters, Ms. Hysell and Ms. Jacobsen, inherited ownership of the decedent's AURATONE Mark and his loudspeaker business.  Future probate proceedings can be undertaken to implement the testator's Will.

10

According to their deposition testimony, Ms. Hysell and Ms. Jacobsen orally transferred the interest they had inherited in the Auratone business and the AURATONE Mark to Michelle Jacobsen's son, Alex Jacobsen, in 2012 when Alex graduated from college.  Music Tribe argues that the AURATONE Mark was never properly assigned to Alex Jacobsen.

Music Tribe's improper assignment argument is misplaced.  This is because common law trademark rights vest in the party who uses the mark in commerce.  Ms. Hysell and Ms. Jacobsen maintained use of the AURATONE Mark by continuing to promote, advertise, and make sales of their father's Auratone products through the websites that they had created to facilitate these transactions.  The AURATONE Mark was either affixed to the goods themselves or located on the sales receipts accompanying the products.

Moreover, "[i]t is well settled that an assignment in writing is not necessary to pass common law rights to trademarks." *Airport Canteen Services, Inc. v. Farmer's Daughter, Inc.,* 184 U.S.P.Q. 622 (T.T.A.B. 1974).  Only registered marks must be assigned in writing, 15 U.S.C. § 1060(a)(3).  When Mr. Wilson's daughters orally transferred their interest in their father's business to Mr. Jacobsen in 2012, they also assigned and conveyed their common law rights in the AURATONE Mark.  Since Mr. Jacobsen continued the family business, the common law rights associated with the AURATONE mark never ceased.

B. **Abandonment of the AURATONE Mark**

Section 45 of the Federal Trademark Statute states, in relevant part, as follows:

A mark shall be deemed to be "abandoned" --

> (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of that mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.   15 U.S.C. § 1127

Abandonment is an affirmative defense on which Music Tribe bears the burden of proof. Arbitration Agreement IV(l). A mark is deemed abandoned under the statute "[w]hen its use has been discontinued with intent not to resume such use." Intent not to resume may be inferred from circumstances, and nonuse for three consecutive years is "prima facie evidence of abandonment."

Under Ninth Circuit law, which governs in this arbitration proceeding, abandonment must be strictly proven. *Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California,* 694 F.2d 1150, 1156 (9th Cir. 1982). While nonuse for three consecutive years constitutes prima facie evidence of abandonment, this creates a rebuttable presumption of abandonment but does not shift the burden of proof to the trademark owner. *Abdul-Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 411 (9th Cir. 1996).

In general, the Ninth Circuit has adopted a broad view of "intent to resume use." Even a single instance of use can be sufficient to defeat a claim of abandonment if that use is made in good faith. *Carter-Wallace, Inc. v. Proctor & Gamble*, 434 F.2d 794, 804 (9th Cir. 1970).

In *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931 (9th Cir. 2006), a seminal Ninth Circuit case on the subject of abandonment, the appellate court cited cases from other jurisdictions in concluding that abandonment is in the nature of a forfeiture. Accordingly, the party asserting the defense of abandonment bears a heavy burden of proof. The Court held:

> Good faith nominal or limited commercial sales of trademarked goods are sufficient . . . to avoid abandonment, where the circumstances legitimately explained the paucity of the sales.
>
> Because the abandonment inquiry is tied to the unique circumstances of each case, it is appropriate to look at the totality of the circumstances to determine if genuine, albeit limited, usage of the mark qualifies as trademark use "in the ordinary course of trade" under Section 1127.

"Use" of a mark is broader than sales of the trademarked product. The Ninth Circuit has held that "use" can consist of promotional events, maintenance of a website, customer solicitations and other activities, not merely sales of the product. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1070 (9th Cir. 2014).

In making a determination of abandonment, the Ninth Circuit looks to analogous factors guiding examination of trademark "use" in the context of the registration of a mark. One factor to consider is "whether the mark was sufficiently public to identify or distinguish the marked service [or product] in an appropriate segment of the public mind as those of the holder of the mark." *Id.* Citing *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) the court noted that the phrases "use in commerce" and "use in the ordinary course of trade" are flexible enough to encompass various genuine, but less traditional, trademark uses and acknowledge a possibility that use may be interrupted due to special circumstances. The Court noted that the legislative history

13

leading to the passage of Section 1127 reflects Congress' intent to include a broader interpretation of trademark usage in the context of the abandonment of a mark.

The *Electro Source* court emphasized that "if trademark protection were stripped the minute a company runs into financial trouble or decides to liquidate, the two cornerstone interests in trademark law would be defeated — protection of the public through source identification of goods and protection of the registrant's investment in the trademark." *Id.*  Trademarks shield the public from confusion by accurately indicating the source of a product. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 305 (9th Cir. 1992) (describing the Lanham Act's objective of protecting against the unfair use of a rival's mark, where "the infringer capitalizes on the investment of time, money and resources of his competitor").

In summary, the Ninth Circuit has adopted a stringent approach to abandonment. Even "good faith nominal or limited commercial sales of trademark goods are sufficient . . . to avoid abandonment, where the circumstance legitimately explained the paucity of the sales." *Electro Source* at 939.

Music Tribe has an uphill burden to establish that Auratone had an "intent not to resume use" under Ninth Circuit law.  Moreover, the TTAB allows the trademark owner to demonstrate "excusable nonuse" that would negate any intent not to resume use of the mark. *Jill E. Peterson v. Awshucks SC, LLC*, 2020 WL 7888976 (T.T.A.B. Dec. 23, 2020).  Subsequent use may be probative of whether the owner intended to commence use during a previous period of nonuse. *Crash Dummy Movie LLC v. Mattel, Inc.*, 601 F.3d 1387 (Fed. Cir. 2010).  A trademark owner can rebut the presumption of abandonment by showing valid reasons for nonuse or lack of intent to abandon the

mark.  The standard for proving nonuse is high.  *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1247-48 (9th Cir. 1996).

As the Ninth Circuit stated in *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), courts must consider the totality of the circumstances surrounding use of the mark.  Even a declining business can retain and benefit form the goodwill associated with the mark.  Wells Fargo continued to use the mark in several ways, including in customer presentations and solicitations.  The Court noted that "such uses demonstrate Wells Fargo's business calculation that it could continue to benefit from the goodwill and recognition associated with [the mark], and we conclude that Wells Fargo continued its bona fide use of the mark in the ordinary course of business through these uses."  *Id.*

Similarly, in *Defiance Button Mach. Co. v. C7C Metal Prods. Corp.*, 759 F.2d 1053, 1060 (2d Cir. 1985) the Second Circuit noted that, when the goodwill in a mark has not dissipated and the owner intends to market a product substantially similar in nature and quality within a reasonable period of time, the defense of abandonment has not been established.  In reaching that conclusion, the Court stated:

> If neither the separation from tangible assets, by itself, nor the termination of a business, by itself, will necessarily and immediately vitiate a mark and its associated goodwill, we see no reason why, under appropriate circumstances, the combination of these two events must inevitably destroy instantaneously the owner's goodwill and strip the owner of any rights to its mark.

*Id.*

The testimony of Alex Jacobsen at the hearing, as well as the prior deposition testimony and declarations offered into evidence, establish that Jack Wilson's heirs always intended to continue use of the AURATONE Mark.  Ms. Hysell spent years

15

maintaining the Auratone inventory, plans, tools, designs and a workspace for the business after her father's death.  She established a website for Auratone and maintained a domain name throughout 2006 to 2012.  She enlisted her son to update the design of the AURATONE logo.  Certain products transported from California to Ms. Hysell's home in Georgia were marked with the AURATONE Mark.

Notably, the death of the original trademark owner (and developer of the Auratone loudspeakers) presents special circumstances here that are sufficient to overcome a finding of abandonment.  This conclusion is bolstered by the continuing fame of the AURATONE Mark amongst sound engineers in the music industry.  The goodwill associated with the AURATONE Mark and its legendary speaker system continues to this day, as evidenced by the deposition testimony of independent third-party witnesses.

Mr. Jacobsen continues to build upon the AUATONE Mark's consumer goodwill. In 2016 the National Association of Music Merchants ("NAMM") inducted the Auratone 5C Super Sound Cube – the speaker used by Quincy Jones, Michael Jackson and Kenny Rogers – into its Hall of Fame, a singular honor reserved for individuals and companies who have made technological innovations in the audio and sound recording industry.  In 2020, the NAMM recognized Respondent Auratone's outstanding contributions to the music industry by awarding it the Outstanding Technical Achievement Award, further demonstrating Mr. Jacobsen's ongoing efforts to develop new high-quality goods under the AURATONE Mark.  The continuing fame and high quality of the speakers and their accumulated goodwill over the decades-long history of the AURATONE Mark are further evidence that the Mark has not been abandoned.

Consequently, Music Tribe has failed to meet its burden of proof in establishing abandonment.

## **CONCLUSION**

For all the foregoing reasons, and consistent with the language specified in the parties' Arbitration Agreement, I enter the following Order:

I find that Auratone LLC has priority rights in the AURATONE Mark. Accordingly, the Music Tribe parties, and any party identified in Fed. Rule Civ. P. 65(d)(2), are permanently enjoined from the following:

1.      Using the AURATONE Mark, and any confusingly similar variation thereof, in the United States for loudspeakers, headphones, and related products for recording, transmission, reproduction, creating, processing, retrieval and manipulation of sound.  [Pursuant to the parties' Arbitration Agreement, Music Tribe may use the word mark BEHRITONE, without any accompanying logo.  Auratone agrees that BEHRITONE is not a confusingly similar variation of the AURATONE Mark.]

2.      Registering or applying to register the AURATONE Mark in any state or in the U.S. Patent & Trademark Office, or both for loudspeakers, headphones, and related products for recording, transmission, reproduction, creating, processing, retrieval and manipulation of sound.

3.      Objecting to or opposing Auratone LLC's use or registration of the AURATONE Mark in the United States.

With respect to costs of this arbitration proceeding, Article III(b) of the parties' Arbitration Agreement provides as follows:

> Expenses for the arbitration hearing, including the
> arbitrator's fees and expenses and the cost of any hearing or

arbitration room and necessary equipment will be shared by the parties whenever reasonably possible and will be evenly split between Auratone and MUSIC Tribe up to a total of $30,000.  Any expenses for the arbitration hearing, including arbitrator's fees and expenses, exceeding $30,000 will be borne by MUSIC Tribe. Each party will bear the fees and expenses of its own representatives, attorneys, witnesses, court reporters, and experts.

In light of the foregoing provision, any arbitrator's fees above $30,000 will be borne by Music Tribe.  Each party will bear its own attorneys' fees, expenses for court reporters, and any other related costs and expenses of this proceeding.

Dated:  July 9, 2021

_____

Jane Michaels

Arbitrator

16979448_v2

18